Herdman v. Cooper.

## WILLIAM H. HERDMAN ET AL.
## v.
## SAMUEL D. COOPER ET AL.

*Homestead—Ownership in Common by Husband and Wife—Value—Foreclosure—Sale—Subsequent Sale under Execution before Time of Redemption Has Run—Injunctions.*

1. Where a husband and wife are owners in common of the property on which they reside, in estimating the value of his homestead his interest will not be alone considered; and it seems that the right of homestead does not extend to his interest in an adjoining lot within the same inclosure.

2. An undivided interest accompanied by exclusive possession will support the homestead right.

3. A second sale of land under judicial process is not permitted within the time allowed for redemption from a previous sale.

[Opinion filed January 10, 1889.]

IN ERROR to the Circuit Court of Jefferson County; the Hon. C. C. BOGGS, Judge, presiding.

Messrs. POLLOCK & POLLOCK, for plaintiffs in error.

On the 11th day of June, 1886, plaintiffs in error made the mortgage on lot 2 to Samuel H. Watson to secure a debt due in October of the same year. It was sold under the decree of foreclosure on the 19th day of February, 1887, and the decree was at the December term, 1887, so that lot 2 was free from the effect of that judgment at the date of the decree. Ford v. Marcall, 107 Ill. 136; Hastings v. Bryant et al., 115 Ill. 69.

The execution was issued and levied on the interest of William H. Herdman in lot 2 on the 12th of February, 1887, but the equity of redemption in Herdman did not expire till the 19th day of the same month, and was therefore irregular and can not be sustained. Hernandez v. Drake, 81 Ill. 34–40; Manf. Co. v. Dagget, 84 Ill. 556; Bell v. Warden, 110 Ill. 310.

If Joel F. Watson had any remedy against lot 2 by virtue of that judgment and execution he could only avail himself of

it by redeeming from the sale under the decree. Where a party fails to redeem from a former sale he loses all right to subject the property. Fitch v. Wetherbee et al., 110 Ill. 475; Chandler et al. v. Higgins, 110 Ill. 902.

The issue of the execution created no lien upon lot 2, not being issued from another county. Conwell v. Watkins, 71 Ill. 488.

It may be claimed that Joel F. Watson, having obtained the certificate of purchase under the decree from Samuel H. Watson, could subject this lot. An assignment of a certificate of purchase to one entitled to redeem is not a redemption, and he will not be permitted to use it as a certificate of redemption. He must redeem absolutely and leave the evidence of it on record. McRoberts v. Conover, 71 Ill. 524; Moore v. Hopkins, 93 Ill. 505; Chandler et al. v. Higgins, 109 Ill. 602.

The bill shows, and it is admitted in the answer, that there had not been any redemption and that Herdman then held the equity of redemption. But Watson could not sell this equity, and therefore his proceeding was void, and the Circuit Court committed manifest error in not supporting complainants' bill upon this ground.

As often as this question has been presented to this court the homestead law has been declared to be remedial, and should receive a liberal construction for the purpose of securing a home for the wife and children beyond the reach of the husband's creditors. It was intended to secure a living out of the property of the husband for the support of the wife and children when the father is prostrated by financial misfortune, and a protection against his neglect and imprudence. Ever since the enactment of the law the struggle has been continued by the creditor to restrict and defeat the object of the law. The act of October, 1861, and amendments, wholly changed the rights and liabilities of the wife. In her separate property and earnings she is as independent of her husband as if she was a stranger to him, except as to her services as a wife. Thomas v. Mueller, 106 Ill. 36; Patten v. Patten, 75 Ill. 446.

But if the rule held by the Circuit Court in this case be

Herdman v. Cooper.

correct, then, because she is a wife, her separate property is to be treated as the husband's property to satisfy the claim of his creditors, although she may have creditors also equally meritorious. The wife has a right of homestead in the property of her husband. Sanford v. Hinkle, 112 Ill. 146, 373; Shepherd v. Spremont, 111 Ill. 631.

A stable, horse-lot, smoke-house and grounds therewith connected constitute a homestead. Reinback v. Walter, 27 Ill. 393; Thornton v. Bayden, 31 Ill. 200.

Where the residence of the debtor is upon one lot of land and other buildings upon another lot contiguous thereto, the debtor is entitled to a homestead whereon his buildings are, without reference to quarter section lines. Darby v. Dixon, 4 Ill. App. 187.

The language of the statute is that every householder having a family shall be entitled, etc., and this court, in the case of Hill v. Bacon, 43 Ill. 477, 478, said that the language was unmistakable that there shall be exempt from levy and forced sale the lot of ground and building thereon occupied as a residence and *owned* by the debtor, being a householder and having a family. The homestead right of the wife can not be divested, except as provided by statute. It is paramount to any right that the husband can transfer. Brooks v. Hotchkiss, 4 Ill. App. 175; Johnston v. Dunavan, 17 Ill. App. 59.

Messrs. G. B. LEONARD and ALBERT WATSON, for appellee.

REEVES, J. On the 14th day of May, 1884, Joel F. Watson obtained a judgment in the Circuit Court of Jefferson County against plaintiff in error, William H. Herdman, for the sum of $300.50 and costs of suit. On the 12th day of February, 1887, an execution and fee-bill were issued on this judgment to defendant in error, Cooper, sheriff, and levied by him on lot 2, block 18, in the city of Mt. Vernon, and a sale of the lot advertised by the sheriff. Thereupon the said William H. Herdman and his wife filed their bill in chancery in said Circuit Court, alleging that the said William H. Herdman was, and had been for more than twenty years, a house-

holder, the head of a family, and for all that time lived with
his family. For more than twenty years his wife had been
the owner of an undivided two-thirds of lot 3, block 18, city
of Mt. Vernon, and for a like time William H. Herdman had
been the owner of the other undivided one-third of said lot;
and for the same length of time the said William H. Herd-
man had been the owner of the undivided eight-ninths of lot
2 in same block, and lots 2 and 3 since 1860 have been in the
same inclosure. The house occupied by said William H.
Herdman and his family is situated upon lot 3, and their barn
and stable is situated partly upon lot 3 and partly, and chiefly,
upon lot 2. Lot 2 has been for more than twenty years used
by said William H. Herdman and his family for a vegetable
garden and for fruit trees, as a part of the homestead, and
that the interest of the said William H. Herdman in lots 2
and 3 did not exceed in value the sum of $1,000.

The bill further sets forth that in June, 1886, said William
H. Herdman and his wife gave to Samuel H. Watson a mort-
gage on lot 2 to secure the payment of $140, due in October,
1886, which mortgage was foreclosed, and the lot was sold on
the 19th day of February, 1887, under the decree of foreclos-
ure, and said Samuel H. Watson became the purchaser, and
afterward the certificate of purchase was assigned to defend-
ant in error, Joel F. Watson. The bill sets out the judgment,
issuance of execution thereon and levy of same upon lot 2, as
above stated. The bill prayed for an injunction to restrain
the sale under the execution (which was granted), and that,
upon a hearing, lot 2 might be declared a part of William H.
Herdman's homestead, and for general relief.

The answer of Watson admits substantially all the allega-
tions of the bill, except that as to homestead, and denies that
Herdman had any homestead right in lot 2, and denies that
one-third of lot 3 and eight-ninths of lot 2, taken together, did
not exceed in value $1,000.

The cause went to a hearing and a decree was entered find-
ing that the homestead of Herdman was confined to lot 3, finding
the value of lot 3 to exceed $1,000, and dissolved the injunction
and dismissed the bill. Herdman and wife bring the case to

this court by writ of error, and assign, among other errors, first, that the court erred in finding that the right and estate of homestead of plaintiff in error, William H. Herdman, was confined and restricted to lot 3, and that the plaintiffs in error are not entitled, nor either of them, to lot 2 or any part thereof, as a homestead; and second, that the court erred in finding that the execution and fee-bill were lawfully issued and levied on lot 2. It is insisted that the testimony does not support the finding that lot 3, with its improvements, was worth more than $1,000. We have carefully read all the testimony on this point, and think it fully supports this finding. It is further contended that as William H. Herdman owned only one-third of lot 3, in estimating the value of his homestead only one-third the value of lot 3 should be taken, and the balance of $1,000 should be taken out of lot 2. We can not accede to this as a correct view of the law applicable to homesteads. It has been held that where husband and wife live together on the wife's land, the husband can not have a homestead in other property owned by him. Tourville v. Pierson, 39 Ill. 446; Hay v. Baugh, 77 Ill. 500.

It is further contended that neither husband nor wife could maintain their homestead right as to lot 3, because a homestead right can not be supported by an undivided interest in land, and as lot 3 was owned two-thirds by wife and one-third by husband, no homestead could exist as to either of them in lot 3, and as the court found that for five years before the rendition of decree, William H. Herdman owned all of lot 2, and was occupying the same as a part of his homestead, he ought to have been protected in a homestead right in lot 2 by the decree. In the first place, while the question is one in reference to which the authorities do not agree, yet we think the weight of authority is that an undivided interest, accompanied by exclusive possession, will support the homestead right. Upon the question, will an estate in common support a right of homestead in one of the co-tenants, or must it be an estate in severalty, a hasty examination of the authorities discloses that New Hampshire, Vermont, Iowa, Kansas, Nebraska, Arkansas and Texas hold that an estate in common

will support the right of homestead in one of the co-tenants, while Massachusetts, Wisconsin, Minnesota, California and Louisiana have held to the contrary. Whatever may be the correct view upon this question, it is difficult to see how, if Herdman did not have a homestead right or estate in lot 3, he can be said to have a homestead in lot 2. The language of the statute is that every householder having a family shall be entitled to an estate of homestead to the extent in value of $1,000 in the farm or lot owned or rightly possessed, by lease or otherwise, and occupied by him or her *as a residence*. Lot 2 independent of lot 3 can not be said to come within this provision. We are, therefore, of the opinion that this finding of the court was correct.

In considering the second error, it should be remembered that lot 2 was sold under the decree of foreclosure on the 19th day of February, 1887, and the time of redemption would not expire until February 19, 1888. In May, 1887, Watson had his execution levied on lot 2, and caused the same to be advertised for sale. The law does not permit a second sale on judicial process of same land within the time allowed by law for a redemption from first sale. Cook v. City of Chicago, 57 Ill. 268; Merry v. Bostwick, 13 Ill. 398; Watson v. Reissig, 24 Ill. 281.

If it be said that the Watson judgment was a prior lien to the mortgage, under a foreclosure of which the first sale was made, it is sufficient answer to say that the record does not show it was a prior lien. The judgment was obtained in May, 1884, but the record fails to show that an execution was issued on the judgment until February 1, 1887. In this state of case the lien of the judgment was lost and the only lien on the lot in controversy was created by the levy of the execution in May, 1887. It follows that the levy of the execution upon the lot, and the attempt to sell the same under the execution, was illegal, and the court should have so found. For the error indicated, the decree of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*