ALICE H. ALDRICH *et al.* v. J. H. BOICE *et al.*
No. 7810.

1. QUIETING TITLE—*Pleading.* In an action to quiet the title to several lots of land, and where the allegations of the petition are unquestionably good as to a part of them, a general demurrer thereto that the petition does not state sufficient facts cannot be sustained.

2. JUDGMENT LIEN—*Equitable Title Sold.* The record examined, and *held* sufficiently to show that the equitable title to the property levied upon and sold to satisfy a judgment lien was in the judgment debtor.

3. ——— *Subsequent Occupation as Homestead.* Where a judgment lien has attached to land, no subsequent occupation of the same as a homestead by the debtor affects the extent or validity of the lien.

*Error from Cherokee District Court.*

ACTION by J. H. Boice and others against Alice H. Aldrich and others. Judgment for plaintiffs, and defendants bring the case here. The facts sufficiently appear in the opinion.

*H. C. Root,* for plaintiffs in error.

*Ritter & Skidmore,* and *Wm. F. Sapp,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by J. H. Boice, Wm. F. Sapp and J. Shoman to quiet the title to three lots in Galena which was clouded by a claim of title made by Alice H. Aldrich and her husband, Joseph E. Aldrich. H. B. Aldrich and Laura L. Aldrich were husband and wife, and had two children named Joseph and Mary. They resided in the state of New York, but owned property in the West, and the title to the lots in question was in the wife, Laura

L. Aldrich, at the time of her death, on December 10, 1886. On March 8, 1888, H. B. Aldrich and Hattie J. Aldrich were married, and subsequently there was born to them a daughter. Shortly before her death, Laura L. Aldrich executed a will, in which she bequeathed her property, including that in controversy, to her husband, H. B. Aldrich, and it is alleged that it was transferred to him under an agreement that the property was to be held by him in trust for the two children, Joseph and Mary, and was to be divided between them when they could agree on a division of the property. Joseph intermarried with Alice H., and Mary was married to E. E. Sapp, all of whom, together with the second wife, Hattie J. Aldrich, and her infant daughter, were made parties defendant. In the latter part of 1889 Joseph and Mary agreed upon a division of the property held in trust for them by their father, and this was done at his earnest solicitation. Afterward he executed deeds conveying to Mary the property allotted to her, but it appears that Joseph was involved in financial troubles and the conveyance to him was delayed. On January 18, 1890, H. B. Aldrich suddenly died intestate. Soon afterward the heirs, who all conceded that the property allotted to Joseph belonged to him, joined in what was understood to be a conveyance of the property to him, but no grantee was named in the instrument. It was, however, delivered to Joseph, and subsequently the name of his wife was written in the deed as grantee. It appears that in 1886 a judgment was recovered against Joseph in the district court of Cherokee county for $1,883.70. Under an execution issued January 20, 1890, the property in question was levied upon as the property of Joseph, and on March 3, 1890, was sold by the sheriff to J. H. Boice, who afterward conveyed an undivided one-third to each of

his codefendants in error. Immediately after the sale and conveyance Boice took possession of the lots, but within few weeks afterward Joseph and his wife, who had been in Massachusetts, came to Kansas, and in some way gained an entrance to one of the houses on the lots in controversy, and continued to occupy the same until the trial occurred. In addition to the claim that the title to the property was in Alice. H., the wife of Joseph, they claim that it was their homestead, and was therefore exempt from sale on execution, but the court decided all the issues against them.

They first contend that, as the petition showed that they were in the occupancy of one of the lots, the statutory action to quiet title could not be maintained, and that the demurrer filed by them should have been sustained. The allegations of the petition are probably full enough to entitle the plaintiffs below to the equitable relief which they sought, independent of the statutory action. If, however, we treat it as a statutory action to quiet title, the overruling of the demurrer must be held to have been correct. Under any interpretation of the averments of the petition, it appears that the plaintiffs were in the actual possession of two of the lots at the commencement of the action, and, as to them, it undoubtedly stated a good cause of action. The demurrer being general to the entire. petition, it was in any event properly overruled.

It is next contended that the evidence fails to sustain the finding and judgment of the court, and that under the facts in the case the title. to the property was in Alice H. Aldrich, and not in her husband, and was therefore not subject to levy and sale for the payment of his debts. This claim is hardly available in the state in which we find the record. It does not

show in any legal way that it contains all the testimony that was heard by the trial court. If we should treat the evidence in the record to be complete we think it is amply sufficient to sustain the findings of the court. It is conceded that H. B. Aldrich held the property in trust for the two children, Joseph and Mary. The trust was fully recognized and often stated by H. B. Aldrich, and to carry out the wishes of his former wife he gave the property to the children. He required them, as between themselves, to make a division of the property, which was accomplished in the November preceding his death. After the division was made, Joseph took possession of the property in question as his own, collected rent, and otherwise exercised acts of ownership over it, prior to the death of his father. The testimony shows that the equitable interest and title to the property was in Joseph, and that this was conceded by all who had any interest in the estate of H. B. Aldrich is shown by the ineffectual attempt to convey the legal title to him after the death of his father. Land held by an equitable title is subject to levy and sale, as well as that held by a legal title.

There is little foundation for the claim of homestead made by them ; and, in the absence of a showing that all the testimony is in the record, we cannot in any event disturb the finding of the court upon that question. They had never resided on this property prior to the levy and sale of the same. Where a judgment lien has attached, no subsequent occupation of the land as a homestead by the debtor affects the extent or validity of such prior lien. (*Bullene v. Hiatt*, 12 Kan. 98 ; *Machine Co. v. Miner*, 28 id. 444.)

The judgment of the district court will be affirmed.

All the Justices concurring.